Okay, and each side in this matter has 15 minutes total. Good morning, good morning. Good morning. May it please the court. My name is Julianne Fleischer and I represent the appellant, Pastor Dennis Hodges. I'd like to respectfully reserve two minutes for rebuttal. Your honors, this case concerns a bedrock constitutional rule. The government cannot create a religious test to hold public office. While at times commonality of political purpose may be an appropriate requirement, commonality of religious belief is not an appropriate requirement. The mayor's actions toward Pastor Hodges crosses this constitutional rule. By punishing Pastor Hodges for his religious belief, the government applied exactly the kind of religious test that the Constitution prohibits. So just factually, so that I can get this on point, he was not reappointed. He was not removed during his first advisory term. Is that correct? That's correct, your honor. The mayor exercised his veto authority to veto Pastor Hodges' reappointment to the police advisory board, but that veto authority was exercised as a result of Pastor Hodges' religious belief. Well, okay, but, but it's a volunteer position. Is that correct? Yes, your honor. All right. And I note that you are arguing that you would like us to apply a Pickering standard and Pickering are people that are actually employed. Is that correct? Is that a distinction? That's correct, your honor. All right. So in his first, he, he's a volunteer and my understanding is he is an African-American. He's a pastor and he has, he held either a chief of police or high police positions, correct? That's correct. So the first time he's appointed and, and the mayor does not exercise a veto on, well he's appointed and he's in the first advisory term, things come up during that and there are attempts to try to remove him in his first volunteer term, but those don't occur. So we're talking about his reappointment as a volunteer. Is that correct? If I could just add one minor clarification, the removal attempts actually occurred in his position as a county commissioner. So his religious beliefs were actually disclosed while he was sitting as a county commissioner. So that occurred. And then a year and a half later, the mayor exercised his veto authority to veto his reappointment to the police advisory board. So there's actually two. His county commissioner position is not what we're talking about here. That's correct. But just to clarify that there was only one removal effort and that was related to the board of commissions attempting to remove Pastor Hodges from the commission, which ended up being unsuccessful. And then the only time that his removal or his reappointment was denied as it relates to the police advisory board, relates to the mayor vetoing his reappointment to the police advisory board. So in your opening brief, you say Pastor Hodges was not appointed by the mayor. That's correct. That just seems to flatly contradict the municipal code. Your Honor, and actually I believe it's a docket entry 20.1 that was actually submitted in the request for judicial notice by the mayor. There's a memorandum that actually indicates that a city council person nominated Pastor Hodges for appointment to the police advisory board. And that memorandum was actually sent to the city council, which has the authority to affirm the nominations. Right. But the appointment is by the mayor. There could be nominations by the council and there can be confirmation by the council, but the appointment is by the mayor. Correct? That's correct. Your Honor. Pastor Hodges was appointed by the mayor. Correct. According to the record. No, but your Honor, even what you just said was a nomination and a confirmation. It wasn't appointment. I mean, I was listening very carefully to the verbs you use. You never said the council appointed him and the citizens advisory board municipal code says the member shall be appointed by the mayor and confirmed by the council. Yes, your Honor. And I wouldn't disagree with that representation. I would just say that in the record and in the first amended complaint, my client's understanding and recollection of the events of his appointment or that a city council person nominated his appointment that he was confirmed by city council and that the mayor had no involvement. Again, this is at the motion to dismiss phase. So whether that fact is not true or inaccurate, that would have to come out during discovery. But your Honor. If the panel, if the panel were aware of a memorandum on the city's website where in Mayor Gloria does re nominate Hodges, would we take no judicial notice of that? Your Honor, you could, but I would probably just maybe even clarify and it might be helpful for the court that whether or not the mayor actually appointed a pastor Hodges does not. That doesn't change our analysis of what this court should do in terms of whether the policymaker exception should apply. So generally, and this court in. Would you concede we are bound by lattice, it's a three judge panel of our court. So we have to follow that. And so if in fact we were to find that the policymaker exceptions to government terminations, if we think that lattice controls this and that he had the exception, then you lose, right? No, Your Honor, for a couple of reasons. One, lattice is actually very factually distinguishable from this case for a couple of reasons. In lattice, the panel there recognized that lattice had the authority to speak on behalf of the person that appointed them. They interacted with the public. The board there held public meetings. The advisory board member was required to interface with the constituents. That is not the case here at Hodges. On docket 20.1, page 12, it lists out the specific duties of this advisory board. And nowhere in that list of duties does it say or give any authority to an advisory board member to interact with the public. Okay, I'm going to look at paragraph 22 of the complaint for Pastor Hodges. Quote, in his advisory board appointment, Mr. Hodges served as a bridge between law enforcement and the community and sought to build trust between the public and law enforcement. That's in his complaint, and it's also consistent with the municipal code, which talks about the board shall function as a method of community participation in recommending and reviewing policies, practices, and programs designed to make law enforcement sensitive, effective in response to the needs of the city, promote and encourage open communication and cooperation between the police department and residents of the city. Your Honor, but looking at the specific duties, again, on page 12 of docket entry 20.1, that outlines the specific duties in terms of what Pastor Hodges was permitted to do. And so in terms of the statement regarding him being a bridge between the community, I believe, if I recall right, that was in the original complaint. We have since amended the complaint to the first amended complaint to provide greater clarification because I would agree with Your Honor that that statement would probably indicate that he is interacting with the community, but he's not. His job is solely advisory, which was something that was not the case in Lathis. Lathis had wide authority to be able to interact with the community to speak on behalf of the council person that appointed her. I guess, but the point is, okay, the mayor's a political person. Note, well, you're not going to be successful and convince me otherwise on that. I've worked in city government before. That being said, and the mayor has veto power, why do I have to have someone on a volunteer advisory committee that's creating kerfuffles out in the community? Why do I, just because Pastor Hodges wants to be on the committee, and I may exactly, you know, maybe personally I align with Hodges, but if I'm the mayor and I don't align with someone's views, why do I have to have that person on my advisory committee that's causing a lot of kerfuffles out in the community? And he's trying to manage the LGBTQ community. And the comments, while I have no doubt that they are Mr. Hodges' religiously held beliefs, that he truly believes that, but why do I have to have that person on my advisory committee when I don't agree with that philosophy as the mayor, and it's not causing good communication with people? Why do I have to have him? Your Honor, if I can respond with two points. First, I think the distinction is because Pastor Hodges holds sincerely held religious beliefs, that's why specifically even Lathis or the policymaker exception fails here, or it causes problems, because then what we have is a rule that allows any time a government employee or a government volunteer espouses traditional views on gender identity, they're no longer fit for service. That's, quite frankly, a terrible rule to have. But the case is that the standard that you want is a Pickering standard, and those are people that are employed. That's different than fit for service, that in terms of volunteers, I mean, if you look at presidents all the time, they don't appoint people to advise them that don't have their values as far as, this is a volunteer position. You are asking us to say, and people out there can, you know, if their religious views don't align with what, and right now, all of the issues that are hot-button issues for politicians have to do with transgender issues, which does tie to people's religious beliefs. Why does a politician have to have someone on there that is going to undermine what his views are on transgender issues? Well, Your Honor, we would have to probably go back to what the policymaker exception actually is, and that under the policymaker exception, it requires that the government official show that party affiliation is a necessary requirement for the effective performance of the public office. This police advisory board, the sole mission, again, this is found on page 10 of Docket 20.1, the mission of the board is for crime prevention. Let's switch it and say Mr. Hodges was the mayor, all right, and we know what Mr. Hodges' beliefs are, and he has, and so then one of the people that was nominated, or one was nominated from an LGBTQ organization, and the other was from the ACLU. Would Mr. Hodges have to have those people on his advisory board, or would Lathis protect him? Well, if he's publicly disclosing why he's choosing not to appoint someone and it's because of their religious beliefs, then the rule would apply. Again, the issue is whether in other sister circuits, I recognize that we're in the Ninth Circuit, I don't understand where Lathis would ever apply according to your reading here. I'm sorry, it would not? Well, to me, Lathis has no holding the way you're arguing this, that public officials have to appoint people that don't agree with their agendas if it's a religious or other held beliefs. Well, Your Honor, that's why it's so important to do a careful analysis of whether someone is a policymaker, because if Pastor Hodges is a policymaker, then the mayor does have that right to remove someone. However, so let's say that Pastor Hodges is a policymaker. The panel would hold that he's a policymaker, and so therefore under Lathis, therefore under the policymaker exception, the mayor was justified. That doesn't satisfy or answer the cause of action related to free exercise, because you now have a government official that is burdening and punishing someone because of their religious belief. Had the mayor exercised his veto authority and we had no idea why he vetoed his authority or exercised his veto authority, we might have a different case, because we wouldn't have any understanding that the mayor was vetoing Pastor Hodges for anything other than he didn't like the guy or he didn't want him on the board. Do you think that the Lathis case already crossed that bridge? The bridge to cross that river has been built in Lathis because Ms. Lathis' speech in Lathis was not merely political party identification. She was allegedly at an Antifa rally, I think, and exercising her right to free speech, not just to affiliate with the party, right? Yes, Your Honor, that's absolutely correct, but again, I would distinguish Lathis from this case just because we're dealing with religious belief, and the lower court didn't even... Did you make that distinction in district court? Because on reconsideration, the district court was critical of Mr. Hodges for not arguing that. Well, on the motion to dismiss, the mayor only challenged one prong of the free speech clause, and that was whether the speech was protected speech, but that completely ignores all of the other causes of action. So Pastor Hodges is limited by what's raised in a motion to dismiss and actually articulated in its opposition that the mayor forego any arguments related to the other claims, but the focus isn't just on the free speech claim, although we would argue that we're successful on the free speech claim. There's an entire independent analysis, and in Kennedy v. Bremerton, the United States Supreme Court actually noted that religious speech is doubly protected. We have the protections of the free speech clause and the protections of the free exercise clause, and so that's something that this court would need to take into consideration. It's different from Lathis. Lathis dealt with political speech, but here we are dealing with a religious component, and so I'd like to reserve the... You don't have any time, but let me find out if my colleagues... Oh, thank you. No, thank you. They don't. I'll give you two minutes for rebuttal. Thank you, Your Honor. Okay, thank you. Good morning. Good morning, Your Honors, and may it please the court. Elizabeth Biggerstaff on behalf of the appellee, Mayor Todd Gloria. Under the longstanding policymaker rule, the First Amendment has never required a mayor to keep as a representative an individual whose politics do not align with his own. The mayor respectfully requests that this court uphold the lower court's dismissal for three reasons. First, the district court correctly applied Lathis in finding that appellant was a policymaker who could be dismissed for lack of political compatibility. Second, in finding appellant was a policymaker, the district court correctly resolved appellant's free exercise claim under that framework. And finally, even if the mayor's veto did violate the First Amendment, qualified immunity would apply. Now, moving... So, let me ask you this. Are there any limits to what we're talking about here? Because obviously, let's say the mayor decided hypothetically not to reappoint a member of the advisory board because the mayor disagreed with the member's religious tenets. It would depend on whether there was sort of a nexus between those religious tenets and politics, Your Honor. If the appellant had stated, for example, I believe in the Holy Trinity or Friday is my Sabbath, there's really no reasonable argument that those would touch on politics. There's sort of no political discourse surrounding those religious tenets. But here, the mayor's veto did not touch on simply religious tenets. Now, while the appellant's comments were certainly the source of his deeply held religious beliefs, they were nevertheless still political commentary on a community within the city of San Diego. So, is there... But I guess, is there... Your friend on the other side is taking this out of lattice completely. You're putting it right in there or saying secondarily, if it's not covered, there would be no way that it was clearly established that the actions that were taken. So, you're taking the qualified immunity approach to this. But it's a volunteer position. So, and I think it's, even though maybe it's disputed to someone, but it appears to me that the mayor makes this appointment because the mayor can... People recommend and it's ultimately the mayor's decision whether the person gets this. That's correct. Is there any limit to what the mayor can do in a volunteer advisory committee? Under the policymaker doctrine in this court's precedent in Bardzik, this court stated that the only question relevant to a policymaker is whether political loyalty is a requirement of the position. If yes, then that individual can be fired for purely political reasons. So, so long as the source of the misalignment here is political in nature, then there can be a firing or a separation or a veto, like in this case, based purely on politics. And that's exactly what happened here. So, but it's not whether the mayor's a Republican. I don't know if the mayor's a Democrat, I'm guessing. That's correct, Your Honor. Okay. So the mayor could say, I only want Democrats on the committee and that would be fine? No, Your Honor. And those cases have arisen before where you have a new incoming administration and they fire everyone who's a Republican. But the courts have held that that is allowed if the individual is in a policymaking position. If they are advising and they're able to influence city and municipal policy, then they can be removed for a political mismatch. And that's because an incoming administration has a right to implement their policies. Those are electorally mandated policies. So what's the mayor's policy on transgender as it collides with Mr. Hodge's on his religious views on transgender? Your Honor, the mayor is the first openly gay mayor in the city of San Diego's history. So his policies of fostering inclusion for that community is no surprise. The mayor supports transgender individuals. The mayor celebrates Pride Month, attends the Pride Parade, things like that. So his politics on this are not surprising that he wants to foster an inclusive environment for community policing. Did he have Mr. Hodges before? He did, Your Honor. Mr. Hodges had served not just one term but several terms prior and had been appointed by the mayor each time. What weight in your argument is placed on the voluntary nature of this as opposed to an employment relationship for compensation? No weight, Your Honor. The sort of pay— So could the mayor adopt a policy that all employees of the city of San Diego also need to serve as a bridge to the community and foster respect and therefore anyone who has articulated, you know, a view opposite to the mayor's would be within the policymaker or partisan exception? It's certainly not, Your Honor. If the mayor were to sort of impose that on all employees of the city, whether they were a policymaker or not, then the court would have to engage in a pickering analysis. Did you just add that duty to all public-facing employees of the city? From the DMV desk up, have a responsibility to foster a sense of inclusion in the community by doing whatever, using preferred pronouns, et cetera, and that would be enough to bring them within the policymaker exception? Still no, Your Honor, because even if it's a public-facing role, that doesn't mean that that individual influences policy and sort of acts as the public face of their appointer on these sort of community-facing policymaking roles. So the generic employee, the generic contribution of any individual government worker towards fostering a sense of inclusion alone is not enough to make them a policymaker? That's correct, Your Honor. They'd have to be able to actually influence policy, and in this case, the statute's clear that the advisory board on community and police relations was implemented and had statutorily mandated goals to look at the program. I think your friend on the other side asserts that the advisory board is not like the advisory board in Lathis because the advisory board does not speak for the mayor, does not formulate plans, but merely develops ideas and makes recommendations. So can you respond to that? Yeah, and I think that in Lathis, this court did not find an actual finding that Lathis actually spoke on behalf of Councilmember Carr to the community. I think what the court held was that it can be readily and reasonably assumed that when Lathis speaks, he is speaking on behalf of her appointer, Councilmember Carr. And so there need not be an actual finding of discussion to the community or a personal relationship with the appointer. All that matters is that that individual is the face of the appointer on that public board. And if you look at the statute in Lathis and compare it to the statute in this case, their tenants are nearly identical. The statute in Lathis sets forth that they are to provide citizen participation and coordination. Our statute here says that they are to act as a function of community participation. Both held open board meetings that fall under the purview of the Brown Act. The Lathis statute says they have to provide specific recommendations on housing issues. Our case says that the statute they are to provide specific policy recommendations on policing issues. So it can be assumed that when appellant speaks, he is speaking on behalf of the appointer who is here, the mayor. Let me ask a question about the law. It does seem like the Ninth Circuit is kind of an outlier. It seems that other than the Third Circuit, which just does Pickering, and then the slew of other circuits that do Elrod Bronte within Pickering, looks like we're the only circuit that just doesn't do Pickering in this context, just as Elrod Bronte. Do you think that's wrong? No, Your Honor. I think that makes sense because even under the First Circuit's approach, for example, in Foote versus the town of Bedford, they engaged in a Pickering analysis where essentially they came to the same conclusion that Mr. Foote in that case was a policymaker. And as such, his right to free speech was outweighed by the mayor's right to have an appointee who speaks on his behalf. Does that mean this court needs to do a Pickering analysis as well and say, well, it would come out under the same test as in Foote or not? No, Your Honor. I think what the Ninth Circuit's approach does is kind of bypass the unnecessary weighing because this court has held in Bardzig that the only dispositive question is whether the individual is a policymaker where political alignment is a proper requirement for the position. If so, then they can be removed without violating the First Amendment. The Ninth Circuit's approach is much more direct and asks a bigger question, sort of working from the top down rather than working from the bottom up. Well, if we applied Pickering, would that be a violation of lattice? No, Your Honor, for a few reasons. Because first under the first, the appellant did not raise the Pickering argument whatsoever below, not in the dismissal briefing. It's not in their complaint and not in the reconsideration briefing. So we would argue that it's barred from appellants barred from raising that today. But even engaging in the analysis, when you get to the second step of Pickering, the appellant here was a public official making public comments. And so their speech is not protected under the First Amendment. But even if this court were to find that although appellant was a public official, perhaps his comments were not public comments, even under the balancing test, again, Foote versus Town of Bedford is a nearly identical case to this one. But I guess my question was a little bit different than that. It seems like lattice says don't do the Pickering analysis. Absolutely, Your Honor. So if we did the Pickering analysis, would we be in violation of lattice? You're saying I can win under the Pickering analysis. Correct. But we have lattice. Yeah, and this court in Bardzig and then again in lattice and recently upheld six months ago in Neal versus City of Bainbridge, this court has said, yes, that is dispositive inquiry. If the individual is a policymaker, they can be removed or fired or in this case vetoed for political misalignment. So there's no need to go to Pickering. That's come straight out of this court's precedent. What do you view as the main difference between Pickering and lattice? Is it something like lattice looks only at the government efficiency side of the equation and Pickering looks at the importance of the rights, the individual rights at issue? I think, Your Honor, both cases still sort of balance the important rights. Government employees do not leave their political speech abilities and their freedoms at the door when they come to work. But what the policymaker doctrine looks at is rather than that individual's rights, they look at an administration's ability to carry out their functions for which they were electorally voted in. Does Pickering apply to employees or does it equally apply to volunteers? It would seem that we would have to sort of stretch the definition of public employee under Pickering to encompass these types of volunteers. I'm not sure that there's any cases that have directly applied Pickering to a volunteer appointment policymaking position such as this one. But again, even if the court did engage in that analysis and wanted to reverse on its precedent in lattice, under the Pickering analysis in this Foot of Town v. Bedford case, our facts are nearly identical to that case and lattice case. In all three cases, you have a volunteer appointment to a policymaking committee where that individual came out and their statements now created a political misalignment with their appointer. The appointer has a right to have as their representative on a policymaking board somebody who will agree with their politics and will carry out what their administration was elected to do. Are you saying essentially that the doctrine as articulated in lattice is the Pickering analysis in the context of these politically sensitive jobs? I don't think so, Your Honor. That's certainly not what I'm intending to say. It seems like the difference in the Ninth Circuit is sort of at the top of the argument. If you're looking at sort of a diagram, the first question in the Ninth Circuit is, is this individual a policymaker? If yes, you go down the lattice branch. If no, well then let's engage with Pickering. So even before you get to Pickering, this court would find if a policymaker, that's the dispositive inquiry, let's go down lattice. Now regarding the appellant's arguments on the free exercise clause, the district court correctly resolved the free exercise claim under the policymaker doctrine. I'm sorry. If I can backtrack, if the court did move on to apply Pickering, how strong is your case about the actual impact of Mr. Hodge's comments on the work of the advisory board? His comments were made a year and a half before on a separate body, a commission, not a board, and the comments were germane to what that commission was doing, so they weren't off the cuff. Do you have any counterpoints on that? Absolutely, Your Honor. In this case, the appellant was on a county commission board for human rights. However, the county does encompass the city of San Diego. So Lathis's comments about individuals within the county necessarily are about individuals within the city of San Diego. And the Human Rights Commission is very similar in its priorities and its policies and what it's trying to promote as the police advisory board in this case, trying to build an inclusive environment of trust with the police certainly would be relevant. Appellant's comments would be relevant to that board as well. So just because they were made at a county commission doesn't negate their relevance for the city's police advisory board commission. They're still talking about a vulnerable section of the community in a policy board that's trying to foster trust with that community. How can individuals in the community come to that board and discuss these sensitive issues with the mayor and with this advisory board if they feel that the board is going to disparage vulnerable members of the community? So I do think it's still relevant. If there's no further questions, Your Honors, thank you for your time today. Thank you. Your Honors, if I can briefly just address my friend on the other side's statements regarding Pastor Hodges' religious beliefs. I do believe that- Can I ask you a question? Pastor Hodges, as I'm not sure if you are counsel below, didn't mention Pickering in any briefs to the district court. So the district court opinions don't address it. I don't think it's appropriate for the appellate court to address an issue in the first instance without allowing- in an instance where the district court hasn't had an opportunity to address it. Your Honor, this isn't an issue, a new issue that's being brought up on appeal. You agree that Pastor Hodges, none of his briefs to the district court mention Pickering. They don't. They don't, Your Honor, but again, the analysis is first whether the policymaker exception applies or whether someone is the political face of the government official. And so the appellant was addressing and responding to arguments raised by the- But leaving out the Pickering analysis is like leaving out a Fourth Amendment argument or something and then saying you want to bring up a search and seizure argument for the first time on appeal. Well, Your Honor, this is on a motion to dismiss. And so the appellant has brought causes of actions in a first amended complaint. And then it's the mayor's responsibility or burden to show that the mayor- excuse me, that Pastor Hodges has not successfully brought any of those causes of actions within the complaint. And just to address the- we're not asking the court to override any precedent. I don't think that this court has to. So in terms of whether Lathis prohibits the court from applying Pickering, Lathis doesn't address issues related to religious belief. This is a novel issue. It hasn't been addressed by any court, any circuit court even, on what to do when- if we're going to concede, which we don't, that Pastor Hodges is a policymaker, what do we do when the facts indicate that he was fired or removed because of his religious beliefs? At the end of the day, Pastor Hodges vetoed Pastor- excuse me, the mayor vetoed Pastor Hodges' reappointment to the police advisory board, not because of anything he did or conduct related to him acting in accordance with the law, but solely because of his biblical beliefs. All right. Thank you. Unless either of my colleagues have questions, we've gone over time, but we appreciate both of your arguments in this matter, and it will stand submitted. Thank you, Your Honors. Thank you. All rise. This court for this session stands adjourned.
judges: CALLAHAN, KOH, Barker